

FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re:                                )
                                      )   Case No. 14-21767-C-13
CLAYTON GROSSMAN,                     )
                                      )   Adv. Pro. No. 14-02140
            Debtor.                   )
                                      )   DC No. DMA-2
_____        )
                                      )
B.B.,                                 )
            Plaintiff,                )
                                      )
v.                                    )
                                      )
CLAYTON GROSSMAN,                     )
                                      )
            Defendant.                )
                                      )

OPINION

Before: Christopher M. Klein, Chief Judge
_____

Timothy B. Broderick, Broderick Saleen, Palo Alto, California, for Plaintiff.

David M. Alden, Sacramento, California, for Defendant.
_____

KLEIN, Bankruptcy Judge:

Revenge porn comes to bankruptcy. The plaintiff wants a $25,000 judgment debt excepted from the chapter 13 discharge. The judgment was entered in a lawsuit for invasion of privacy and intentional infliction of emotional distress because the debtor-defendant posted on the internet a supposedly-private video showing the parties disrobed and engaged in intimate relations. The question is whether the complaint states a claim for relief under 11 U.S.C. § 1328(a)(4) for "willful or malicious" conduct. The answer is yes.

Facts

For purposes of this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the following facts drawn from the First Amended Complaint are assumed to be true.

The plaintiff[1] and defendant lived together in a monogamous relationship for nearly two years. During that time, based on his promise that it would be only for personal use and would remain private, the plaintiff allowed him to make a video showing her nude and engaging in sexual acts with him.

After their relationship had ended and the plaintiff had married someone else, the defendant uploaded the private video on a pornography website, labeling it with the plaintiff's maiden name and married name and the tags "amateur / ex-girlfriend."

The plaintiff did not give permission for publication of the video. Nor did the defendant inform her of his actions.

By the time the plaintiff learned (from her husband, who was told by a friend) that the video was on the internet and had the video removed from the pornography website, it had been viewed more than 6,900 times.

The plaintiff sued defendant in a California Superior Court for invasion of privacy and intentional infliction of emotional distress, seeking compensatory and punitive damages.

The defendant countered by filing this chapter 13 bankruptcy case, which precipitated the plaintiff's initial version of this adversary proceeding. The Complaint asked this court to award the same compensatory and punitive damages for invasion of

---

[1] The plaintiff is named in the caption by initials to minimize her embarrassment.

privacy and intentional infliction of emotional distress being sought in the still-pending state-court action, together with nondischargeability determinations under 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6).

This court modified the automatic stay to enable the state court to proceed to judgment and stayed the adversary proceeding.

Upon return to state court, the defendant made an offer of judgment under California's version of Federal Rule of Civil Procedure 68 (Cal. Code Civ. P. § 998) for $25,000. The offer was accepted and judgment entered for that amount.

The First Amended Complaint filed here treats the damages as fixed by the $25,000 state-court judgment and alleges counts sounding only in nondischargeability under 11 U.S.C. §§ 523(a)(2) and (a)(4) and § 1328(a)(4).

The defendant has filed the instant motion to dismiss under Rule 12(b)(6) or for a more definite statement under Rule 12(e).

### Jurisdiction

Jurisdiction over this adversary proceeding, which "arises under" title 11, is founded upon 28 U.S.C. § 1334(b). Actions to except debts from discharge are core proceedings that bankruptcy judges may hear and determine. 28 U.S.C. § 157(b)(2)(I).

### Analysis

The question is whether the alleged facts, accepted as true, state a claim for exception from discharge in bankruptcy.

The key statute is Bankruptcy Code § 1328(a)(4), which was enacted in 2005. The relevant portion of that section excepts

3

from discharge any debt for damages "awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual... ." 11 U.S.C. § 1328(a)(4).[2]

The $25,000 state-court judgment debt satisfies the requirement of a debt for damages awarded in a civil action against the debtor. The remaining questions are whether the conduct was "willful or malicious" and whether invasion of privacy and intentional infliction of emotional distress qualify as causing "personal injury" to the plaintiff.

I

The "willful or malicious" injury component of the § 1328 exception to discharge differs from § 523(a)(6), which excepts from discharge debts that are the result of "willful and malicious" injury. Compare 11 U.S.C. § 1328(a)(4), with id. § 523(a)(6) (emphases supplied).

Although the difference between "or" and "and" may affect the dynamic of the analysis, the meanings of the terms "willful" and "malicious" that were hammered out in decades of § 523(a)(6)

---

[2] The actual text of § 1328(a)(4) is:

(a) ... the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt —
...
(4) for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual.

11 U.S.C. § 1328(a)(4).

4

litigation before enactment of § 1328(a)(4) have the same meanings in the later-enacted section. Nothing suggests that Congress intended that the terms "willful" and "malicious" should have different meanings within the same statute.

### A

"Willful" conduct, in the context of personal injury, entails a deliberate or intentional injury and not merely an injury resulting from a deliberate or intentional act. <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 61-62 (1998) (§ 523(a)(6)).

The debtor must either subjectively have intended to cause injury or have believed injury was substantially certain to result. <u>Carillo v. Su (In re Su)</u>, 290 F.3d 1140, 1146-47 (9th Cir. 2002) (§ 523(a)(6)) ("<u>Su</u>").

The requisite state of mind may be established by circumstantial evidence that tends to show what the debtor must actually have known when acting in the manner that produced injury. <u>Su</u>, 290 F.3d at 1146 n.6. Some acts are so inherently wrongful that the very nature of the act testifies to intent: i.e., res ipsa loquitur.

The facts alleged could support a determination by a trier of fact that the defendant's conduct was "willful" under the requisite standard.

Uploading the video onto the pornography website was self-evidently no accident. In addition, the defendant's acts of identifying the plaintiff by both her maiden and her married names are circumstances indicative of a subjective intent to embarrass and humiliate her, inviting harassment, shaming,

5

stalking, or worse.

It follows that the First Amended Complaint states a claim that defendant's conduct was "willful" for purposes of § 1328(a)(4).

B

"Malicious" is an ambiguous concept that has both a factual sense and an artificial, legal sense. The former is controlling for purposes of §§ 523(a)(6) and 1328(a)(4) but eludes proof by direct evidence; the latter describes the circumstantial evidence that provides a proxy for inferring the requisite state of mind.

In the factual sense, "malicious" connotes ill will, animosity, and a desire to do harm for harm's sake. The practical problem of proof for the trier of fact is the rarity of direct evidence of this state of mind.

"Malicious" in the artificial, legal sense means a wrongful, intentional act that is done without just cause or excuse and that necessarily causes injury. <u>Su</u>, 290 F.3d at 1146-47; <u>Petralia v. Jercich (In re Jercich)</u>, 238 F.3d 1202, 1209 (9th Cir. 2001); Introductory Note, RESTATEMENT (SECOND) OF TORTS, Div. 7, Ch. 29 ("RESTATEMENT").[3]

---

[3]As explained in the Restatement (Second) of Torts:

> Introductory Note: The word "malice" has been customarily used in two senses, the one, factual; the other, artificial and legal. "Malice" in the first sense is ill will, animosity and a desire to do harm for harm's sake. "Malice" in the second sense describes the doing of an act that necessarily results in harm to another and is done without a privilege. Throughout this Restatement the word "malice" is used only in the first of these two senses and, therefore, the term "malicious prosecution," although customary, is

6

1   Proof of a wrongful, intentional act done without just cause
2 or excuse and that necessarily causes injury constitutes
3 circumstantial evidence that warrants an inference of factual
4 malice. In other words, the artificial, legal sense is a proxy
5 by which one determines actual, factual malice in the absence of
6 direct evidence of malice.
7   Here, there is direct evidence of factual malice. The
8 defendant's animus towards the plaintiff and intent to injure the
9 plaintiff is inherent in his act of labeling the uploaded sex
10 tape with the tag "ex-girlfriend." It reeks of revenge and of
11 intention to embarrass and humiliate the plaintiff in a manner
12 that necessarily causes damages by inviting harassment, shaming,
13 stalking, or worse. See Jett v. Sicroff (In re Sicroff), 401
14 F.3d 1101, 1106 (9th Cir. 2005) (defamatory statements that
15 necessarily harmed the plaintiff in his occupation were self-
16 evidently wrongful and intentional).
17   In other words, the facts alleged in the First Amended
18 Complaint support a determination by a trier of fact that the
19 defendant's conduct was "malicious" under the requisite standard
20 of being wrongful, intentional, inexcusable, and necessarily
21 damaging to reputation and psyche.
22   Nor was there any just cause that might privilege or excuse
23 the publication.
24   It follows that the complaint states a claim that the

---

used only as a convenient short term to refer to the cause of action covered by this Topic.

RESTATEMENT, Div. 7, Unjustifiable Litigation, Ch. 29, Wrongful Prosecutions of Criminal Proceedings (Malicious Prosecution), Introductory Note.

7

defendant's conduct was "malicious" for purposes of § 1328(a)(4).

C

Although proof of either "willful" conduct or "malicious" conduct are all that § 1328(a)(4) requires, the facts alleged in this case demonstrate both. The injury was both "willful" and "malicious." As such, the facts provide adequate, independent reasons for concluding that the intent element of § 1328(a)(4) has been satisfied.

II

The question becomes whether the torts of intentional infliction of emotional distress and invasion of privacy constitute "personal injury to an individual" as required by § 1328(a)(4) to except the debt from discharge.

A

The requirement in § 1328(a)(4) of "personal injury to an individual" excludes property damage, as well as damage to an entity that is not an individual. In this sense, § 1328(a)(4) differs from § 523(a)(6), which encompasses injury "to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6); Waag v. Permann (In re Waag), 418 B.R. 373, 377 (9th Cir. BAP 2009).

The key question is whether § 1328(a)(4) "personal injury to an individual" includes both bodily injury and nonphysical injury.

The better view is that "personal injury to an individual"

8

1  is not restricted to bodily injury resulting in physical trauma
2  to the exclusion of nonphysical injuries. Adams v. Adams (In re
3  Adams), 478 B.R. 476, 485-88 (Bankr. N.D. Ga. 2012) (Diehl, BJ).

                                    1

6      The basic meanings of the relevant terms, such as "personal
7  injury," are federal questions. The Constitution contemplates
8  uniform laws on the subject of bankruptcy. U.S. CONST., art. 1,
9  § 8. Personal injury is generally the province of the law of
10 torts, typically a common law subject.
11     Although state law ordinarily governs tort law, the need for
12 uniformity makes the meaning of terms in the Bankruptcy Code a
13 federal question. See Grogan v. Garner, 498 U.S. 279, 283-84
14 (1991) (claim validity governed by nonbankruptcy law, discharge
15 of claim governed by federal law).
16     In the absence of specific definitions by Congress of
17 "personal injury," the standard authority on the common law of
18 torts in the context of intentional harm is the American Law
19 Institute's Restatement (Second) of Torts. See Christopher v.
20 Harbury, 536 U.S. 403, 422 n.19 (2002) (citing Restatement).
21     The terms in the Restatement inform the analysis of
22 § 1328(a)(4) and of the decisions construing it. "Injury"
23 denotes the invasion of any legally protected interest of
24 another. "Harm" denotes loss or detriment of any kind to a
25 person resulting from any cause. "Physical harm" denotes
26 physical impairment of the human body, or of land or chattels.
27 RESTATEMENT § 7.
28     "Intent" denotes that the actor intends to cause

Case 14-02140    Filed 09/11/15    Doc 63

consequences of an act, or believes that the consequences are substantially certain to result from it. RESTATEMENT § 8A.

2

On a plain language basis, it is significant that Congress used the term "personal bodily injury" in Bankruptcy Code § 522(d)(11) to exclude personal injury that is not bodily injury. 11 U.S.C. § 522(d)(11)(D). It follows that when Congress used the term "personal injury" in § 1328(a)(4) without the qualifier "bodily," it must have meant a class of "personal injury" not limited to "bodily." It follows that Congress was including nonphysical injuries not associated with property damage. Adams, 478 B.R. at 486.

Other federal statutes have been similarly construed. The phrase "personal injury tort or wrongful death claims" in 28 U.S.C. § 157(b)(5) has been construed to include nonphysical injuries but not business or financial injuries. E.g., Adelson v. Smith (In re Smith), 389 B.R. 902, 908 (Bankr. D. Nev. 2008) (Markell, BJ).

The Supreme Court construed the phrase "damages received on account of personal injury" in a former version of the Internal Revenue Code to include nonphysical injuries. United States v. Burke, 504 U.S. 229, 234-37 (1992) (former 26 U.S.C. § 104(a)(2)). Congress responded to Burke by restricting that statute to damages "on account of personal physical injury or physical sickness." Small Business Job Protection Act of 1996, § 1605, Pub. L. 104-188, 110 Stat. 1838.

Congress is presumed to be mindful of settled judicial

interpretations of terms when it uses those terms. The then-recent experience of Congress acting to overrule the Supreme Court Burke decision by amending Internal Revenue Code § 104(a)(2) suggests that Congress knew what it was doing in 2005 when it enacted § 1328(a)(4) using the term "personal injury." The settled federal interpretation of "personal injury" includes nonphysical injuries.

B

The tort of intentional infliction of emotional distress qualifies as a "personal injury" for purposes of § 1328(a)(4), at least to the extent that the conduct involved is intentional.

The standard elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Conduct, to be outrageous, must be so extreme as to exceed all bounds of conduct that are usually tolerated in a civilized community. Christensen v. Superior Ct., 54 Cal. 3d 868, 903 (1991); Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982); accord, RESTATEMENT § 46.[4]

---

[4]The California Christensen elements are consistent with the Restatement, which reflects federal common law:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and, if bodily harm to the other results from it, for such bodily harm.

11

If such conduct exists, then it is a "personal injury" under § 1328(a)(4).[5]

### C

The torts of invasion of privacy likewise qualify as a "personal injury" for purposes of § 1328(a)(4).

There are at least four distinct torts associated with the invasion of privacy. RESTATEMENT § 652A(2).[6]

Here, the invasion of privacy tort involves the public disclosure of private facts, for which the basic essential elements are: (1) public disclosure of (2) private (not public) facts (3) that would be highly offensive to a reasonable person

---

RESTATEMENT § 46(1).

[5]As explained above, when merely "reckless" conduct is involved, then the § 1328(a)(4) requirements that the conduct be "willful" or "malicious" might be difficult to establish. Here, however, the conduct alleged was unambiguously intentional.

[6]The Restatement describes the torts as follows:

§ 652A General Principle

    (1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.
    (2) The right of privacy is invaded by:
        (a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or
        (b) appropriation of the other's name or likeness, as stated in § 652C; or
        (c) unreasonable publicity given to the other's private life, as stated in § 652D; or
        (d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E.

RESTATEMENT § 652A.

and (4) of no legitimate public concern. RESTATEMENT § 652D.[7]

California conforms to the four elements stated in Restatement § 652D and adds lack of newsworthiness as a fifth essential element. Schulman v. Group W Prods., Inc., 18 Cal. 4th 200, 214-15 (1998).[8]

Under the facts alleged in the First Amended Complaint, the defendant gave publicity to a matter concerning the private life of the plaintiff (her performance while disrobed and engaged in sexual relations) of a kind that would be highly offensive to a reasonable person, that is of no legitimate concern to the public, and that is not newsworthy.

None of the applicable privileges that might provide a just-cause excuse apply to the intentional conduct of posting a private sex tape video of an identifiable person onto a public pornography website. RESTATEMENT §§ 652F & 652G.[9]

---

[7]The Restatement describes the tort commonly denominated as public disclosure of private facts as follows:

§ 652D Publicity Given to Private Life

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
    (a) would be highly offensive to a reasonable person, and
    (b) is not of legitimate concern to the public.

RESTATEMENT § 652D.

[8]California's statement of the fourth element is "offensive and objectionable," instead of the Restatement's "highly offensive." Nevertheless, the California Supreme Court says this variation "does not differ significantly" from the Restatement. Schulman, 18 Cal.4th at 214.

[9]The relevant privileges (absolute, conditional, and special) incorporated by §§ 652F & 652G are spelled out at

Hence, the alleged invasion of privacy by public disclosure of private facts qualifies as a "personal injury" under § 1328(a)(4).[10]

The facts alleged, taken as true, would permit a trier of fact to conclude that the defendant's conduct was "willful," "malicious," and caused "personal injury" within the meaning of § 1328(a)(4). In other words, the First Amended Complaint states a claim upon which relief can be granted.

### III

The procedural effect of the judgment entered by the state court under California's offer-of-judgment statute warrants attention because it affects the future of this adversary proceeding. Cal. Code Civ. P. § 998.[11]

---

RESTATEMENT §§ 583-98 & 611-12.

[10] As explained above, when merely "reckless" conduct is involved, then the § 1328(a)(4) requirements that the conduct be "willful" or "malicious" might be difficult to establish. Here, however, the conduct alleged is unambiguously intentional.

[11] The section provides, in relevant part:

> (b) Not less than 10 days prior to commencement of trial or arbitration (as provided in Section 1281 or 1295) of a dispute to be resolved by arbitration, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. The written offer shall include a statement of the offer, containing the terms and conditions of the judgment or award, and a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted. Any acceptance of the offer, whether made on the document containing the offer or on a separate document of acceptance, shall be in writing and shall be signed by counsel for the accepting party or, if not represented by counsel, by the accepting party.

14

Case 14-02140    Filed 09/11/15    Doc 63

Although the judgment fixes the amount of the debt, as between the parties, at $25,000, it does not have preclusive effect under rules of issue preclusion.  Without issue preclusive effect, the plaintiff will have to prove in a trial in federal court the facts alleged in the First Amended Complaint.

A state's preclusion rules apply to the effect of state-court judgments in federal court.  28 U.S.C. § 1738; Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 801 (9th Cir. 1995); Christopher Klein, et al., Principles of Preclusion and Estoppel in Bankruptcy Cases, 79 AM. BANKR. L.J. 839, 878-82 (2005).

There are two adequate, independent reasons that the judgment is not preclusive of issues that are essential elements for excepting the $25,000 judgment from discharge under § 1328(a)(4).

First, the offer-of-judgment statute specifies that a judgment entered under that procedure "shall be deemed a compromise settlement."  Cal. Code Civ. P. § 998(f); Cal. State Auto. Ass'n Inter-Ins. Bureau v. Superior Court, 50 Cal. 3d 658, 665 n.3 (1990) ("CSAA"); ANN TAYLOR SCHWING, CALIFORNIA AFFIRMATIVE DEFENSES, § 14:14 (2015 ed.) ("SCHWING").

Second, independent of the statutory impediment, the matter was not "actually litigated" and, thus, flunks a requirement for

---

(f) ... Any judgment or award entered pursuant to this section shall be deemed to be a compromise settlement.

Cal. Code Civ. P. § 998.

15

issue preclusion under California law.  SCHWING, § 15:6.

Accordingly, it is settled that a judgment entered pursuant to the offer-of-judgment procedure cannot be preclusive as to any issue other than, as between the parties to the compromise, the amount of the judgment. CSAA, 50 Cal. 3d at 665 n.3; Milicevich v. Sacramento Med. Ctr., 155 Cal. App. 3d 997, 1004 (3d Dist. 1984); 6 B.E. WITKIN, CAL. PROC., Proceedings Without Trial, § 99 at 531 (5th ed. 2008).

## IV

The Motion for a More Definite Statement under Rule 12(e) consists only of the naked assertion that the complaint is so vague or ambiguous that the defendant cannot reasonably prepare an answer. The motion does not, as required by Rule 12(e), point out the defects complained of and the details desired. Fed. R. Civ. P. 12(e), incorporated by Fed. R. Bankr. P. 7012(b).

When the deficiency in the motion was pointed out to the movant, no identification of specific defects or details were forthcoming. In view of the intentional nature of the conduct in question, it is not plausible to believe that the defendant does not know what the plaintiff is complaining about and cannot reasonably prepare an answer to the First Amended Complaint.

## Conclusion

The First Amended Complaint states a cause of action for excepting from discharge under § 1328(a)(4) the $25,000 judgment in favor of plaintiff because the facts alleged, taken as true, establish that the defendant's conduct was a "willful" and/or

malicious" intentional infliction of emotional distress and invasion of privacy by way of public disclosure of private facts. The cause of action is stated with sufficient specificity to enable an answer to be prepared. The plaintiff will, of course, have to prove the relevant facts at trial. The state-court judgment establishes only the amount of the debt as between the parties.

The Motion to Dismiss and the Motion for a More Definite Statement are DENIED.[12]

Dated: September 10, 2015.

_____
UNITED STATES BANKRUPTCY JUDGE

---

[12] The court ruled orally from the bench at the close of oral argument. This opinion memorializes that ruling.

Case 14-02140    Filed 09/11/15    Doc 63

# INSTRUCTIONS TO CLERK OF COURT

## SERVICE LIST

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Timothy B. Broderick
2600 El Camino Real #506
Palo Alto CA 94306-1705

David M. Alden
4440 Duckhorn Dr #420
Sacramento CA 95834